Good morning. The second case on our docket this morning is 20-50793. Mr. Clements. Good morning, your honors. May it please the court. My name is Ben Clements. I represent the Plaintiff Appellants, the Texas Conference of the NAACP, Mi Familia Vota, and Guadalupe Torres. The plaintiffs brought this case against the governor and secretary of state of Texas for violating the Voting Rights Act and the United States Constitution in several specific provisions of the Texas Election Code and an executive order of the governor. These provisions, as applied by the defendants in the context of the COVID-19 pandemic, burden Texas voters by threatening increased risk to health, and they do so in a manner that disproportionately harms and burdens Latino and Black voters in Texas. The district court recognized that the remedies we proposed for addressing this burden were both reasonable and readily implementable by the defendants. Nonetheless, the district court dismissed the case without reaching the merits based on the district court's view that the plaintiff's claims would require it to delve into non-justiciable political questions. The district court's decision, as with the defendants' arguments on appeal, suffers from two fundamental and fatal flaws. First, it completely misconstrued the plaintiff's claims, and second, it misconstrued and misapplied the political question doctrine. The premise underlying the district court's decision, as with the defendants' arguments on appeal, is that the plaintiff's claims represent an unmoored challenge to the entire Texas Election Code that would require the courts to essentially rewrite the code for purposes of the pandemic. Let me ask you this. There's been some understandable clarification of how much you are challenging on appeal. Would you identify for us which Election Code provisions we have to consider in your challenge? Certainly, Your Honor, and they're all identified both by specific description and by the statutory citations in our briefs, but I will outline for the court the specific provisions. All I'm asking is I can actually look and complain. I can look at your brief, but it does seem to me there's been some narrowing of the targets as this case has moved along, and I just want to make sure what we have to deal with is the Fifth Circuit. Okay, certainly, Your Honor. The fundamental narrowing was with respect to moving up early voting and not including that in a preliminary injunction. We do continue to pursue all of our relief, but I'll highlight for the court specifically the governor's order exempting the otherwise requirement for people to wear masks in public polling places. The advisories of the defendants requiring voters at polling places to remove their masks when showing their identification, and in doing so, potentially exposing themselves to election workers also not wearing masks. The prohibition, statutory prohibition on curbside voting for anybody who cannot establish that they have a physical inability to enter the polling place. The statutory restrictions on early mobile voting and the statutory requirement with respect to certain counties that every voter must vote on a repeat use touchscreen voting machine. Now, these provisions, contrary to the suggestion that we have not identified, as I said, are identified in the complaint, they were identified in the opposition to the motion to dismiss, and they're identified in our briefs on appeal. And what the district court was required to do under well-established Supreme Court and Fifth Circuit precedent was not determine the wisdom or the prudence of these various provisions, but to apply the Anderson verdict framework and determine whether these provisions individually or in some combination burden the right to vote, whether that burden is substantial, and whether the state can establish a justification for that burden. But the court did not do that because it did not apprehend the specific claims that we made. But the other flaw I want to draw the court's attention to in the district court's decision is the court adopted the view that the defendants continue to push on appeal that because the Constitution vests management of elections in the state, any challenge to the election code based on the impact to public health during the pandemic necessarily raises non-justiciable political questions. And that sweeping approach is contrary to clear Supreme Court precedent and clear precedent of this court, including two very recent decisions, one shortly before the district court's decision and one three days after in Texas Democratic Party versus Abbott, in which this court rejected the same political question argument made by these same defendants here on appeal, in which they claimed that because the challenge in that case was about a risk to public health during the pandemic, that the challenge improperly raise political questions. This court rejected that argument twice in the Texas Democratic Party case, and in order to accept it here and to affirm the district court on that basis, the court would be required to overrule effectively two very recent precedents of other panels of this circuit. Now, the defendants raise a couple of separate arguments that I am prepared to address. But before I move on to that, I'm also happy to address any questions, additional questions that the court has with respect to the political question ruling. I would like to know, as to each challenge, what exactly you're asking us to do? Well, words on the mask, the order, the exemption, the exception to the order says that masks are only recommended for voters and voting personnel, not required. So you want us to change that and say it's required? Well, just to be clear, with respect to this court, what we are asking this court to do is to reverse the dismissal of the district court and send it back to the district court so it can make its determinations. What we are then asking the district court to do, with respect to the executive order that Your Honor just referenced, we are asking the district court to strike the exemption, to order the governor to remove the exemption so that the mask wearing requirement that applies in almost every other public place applies equally to the voting booth. So the fact that that would be a substitute required for recommended? Well, I want to put it in terms of substituting. I mean, and there won't be any direction at all unless the court first found, and we believe that there's a basis for the court to find, that that exemption unduly burdens the right to vote, and there's not a substantial justification for it. And that does not make it a political question any more than in Texas Democratic Party 1 and 2. In both decisions, this court was faced with whether a court would have the authority to effectively expand vote-by-mail, striking the restriction that limits it to people over 65. Now, the court ultimately did not accept that claim on the merits, but it completely rejected the idea that the claim could not be decided by the judiciary. So the idea that because masks would go from being required in public places except polling places to being required in public places, including polling places, does not make it any more of a non-justiciable question. And does the idea in that case that vote-by-mail would be expanded to persons under 65. And that goes for all of the relief we're requesting with respect to curbside voting. Again, only if the court determines that there is a burden and that the burden is not substantially justified, then the district court has the proper authority, as courts routinely do, to declare that requirement that you be physically unable to enter the polling place in order to vote curbside presents an undue burden. And if the court finds it, that particular requirement could be stricken, just as courts routinely do in deciding questions of constitutionality. What about the Supreme Court's telling us over and over again that when you're this close to the election, we really should not be upending the election process? I mean, if we were to tell people statewide that you're going to have to allow curb service voting, you're going to have to print paper ballots, we're four weeks away. Absolutely, Your Honor. And Your Honor's invoking the Purcell Doctrine, which of course would need to be considered by the district court. But respectfully, there's no law that suggests the Purcell Doctrine comes into play in a determination of whether the court has jurisdiction under the political question doctrine. So even if there may be arguments against some of our relief based on the nearness of the election, those arguments would not be a basis to affirm the district court. The district court needs to determine the merits of the decision in the first instance. But with respect to those concerns, this is not the kind of case that the relief requested, if granted, would result in voter confusion, or would result in a great deal of difficulty to implement and make those changes. How do you print ballots? I don't know what the record shows, but in other cases I've been involved in, the state cannot print paper ballots at this late date unless circumstances have changed in the last 15 years. Well, there are cases in other jurisdictions that have ordered printing of additional ballots. I mean, let me say first of all, they are required to have sufficient ballots available regardless. The relief we're requesting with respect to that particular piece would require additional paper ballots in certain counties. But there is time to do that. There are cases that have ordered it much closer to the election. But again, your honors, I want to point one other thing. Even if some of the relief is no longer practicable, and even if we were to say, well, that makes it a political question, which I don't think would be correct under the jurisprudence. But even if that's true, the issue here, is there any aspect of our claim that presents a judiciable question for the district court? And if there is, the fact that there may be certain parts of our relief that are untenable or will no longer be untenable is not a basis to not allow us to have the judiciary decide our claims on the merits. And so I draw the court's attention to the fact that much of the defendant's arguments seek to paint that broad brush and suggest if any claim that we make raises a political question in some fashion or raises a remedy that could be problematic in some fashion, that's a basis to dismiss our complaint. It's not. That may be a basis for the district court to determine some of the relief we're requesting should not be granted, but it's not a basis to dismiss the complaint. Okay. We consider, well, there are any judicially discoverable and manageable standards for making the change that you, in the state's voting procedures that you requested? Absolutely, Your Honor. And that, of course, is one of the factors that goes into the political question determination. And there are indeed judicially manageable standards here. They're quite similar to the judicially manageable standards that this court found were available in Texas Democratic Party 1 and 2 for the court to determine whether there was a violation of the 26th Amendment. But the standards are the Anderson-Burdick standards. The standards are looking at the provisions that we've identified that I've discussed here, looking at them one by one and looking at them in combination and saying, do they present a burden on the right to vote? Is the burden substantial? And do the defendants have a substantial justification? This court has said many times, the Supreme Court has said many times, that type of constitutional analysis can raise difficult, hard questions for the district court. That does not mean the district court doesn't have both the authority and the obligation to make those determinations, and it does not turn them into political questions. I want to briefly address the fact that the defendants asked this court to affirm on the basis of two grounds not reached by the court, one being standing, the other being sovereign immunity. If the court chooses to reach those arguments in the first instance rather than leave them to the district court to decide, there is no basis for any of those arguments, and in many respects, they also conflict directly with the decisions that this court has already made in Texas Democratic Party 1 and 2. With respect to standing, they claim that the injury here is too speculative, but the injury here is not the injury they claim of getting COVID-19. The injury is increased risk of being exposed and thereby a burden on the vote. That is substantially similar to the injury this court found sufficient in Texas Democratic Party 1 and 2 to establish standing. Your time has expired. You've saved time for rebuttal. Thank you, Your Honor. Mr. Thompson? Thank you, Your Honors, and may it please the court. My name is Will Thompson, and I represent the defendants, the governor, and the secretary of state. Plaintiffs cannot overcome three jurisdictional defects in this case. First is the political question doctrine. The district court correctly dismissed on this ground because there is no judicially manageable standard for determining whether the risk from in-person voting is too high or how state and local officials should lower that risk as a matter of public health. Second, standing. Plaintiffs did not meet their burden of plausibly alleging an injury in fact connected to each and every provision they challenge, as this court required in In Re Gee. Nor did plaintiffs plausibly allege non-speculative plaintiff-specific injuries, as this court required in Stringer v. Whitley. Third is sovereign immunity. The governor does not have a sufficient connection to enforcement of the election code, as this court held in TDP v. Abbott, or a sufficient connection to enforcement of executive orders, as this court held in In Re Abbott. Plaintiffs also have not alleged that the secretary has demonstrated any willingness to enforce the challenge provisions here. In fact, this very morning, Justice Blacklock from the Supreme Court of Texas just released an opinion addressing the limited nature of the secretary's authority. And I apologize that I haven't been able to get in a 28-J on that, Your Honor, as it obviously just came out an hour or two ago. Now, unless the court has a different preference, I'll start with the political question doctrine. My friend on the other side just said that our argument is sweeping. With respect, I disagree. There are many, many voting rights cases that do not present a political question problem. But this case is a far cry from traditional claims. Deciding it would require both expertise in public health and making policy tradeoffs better suited to the political branches of government. For example, plaintiff's complaint demands that in-person voting be done, quote, safely and with minimal risk. That's ROA 20. Of course, defendants want to improve safety, and they're doing so. But the Constitution doesn't provide standards for evaluating defendants' efforts. The Constitution doesn't tell federal judges how safe is safe enough or how much risk is too much risk. But even if the court could divine a constitutionally mandated ceiling on coronavirus risk, implementing any remedy would require expert-level understandings of public health. Plaintiff's complaint says defendants should be enjoined, quote, to ensure that polling sites are safe and of low risk. That's ROA 57. There are no judicially manageable standards. For determining which steps would, quote, ensure any particular public health outcome. Just this Monday, Justice Kavanaugh explained that the, quote, unelected federal judiciary lacks the background, competence, and expertise to assess public health. That's from his concurrence in Andino v. Middleton, which was itself quoting Chief Justice Roberts' earlier opinion in South Bay United Pentecostal Church v. Newsom. And that's consistent with how the Supreme Court treated the political question doctrine in Rucho. It said that federal judges should not base constitutional holdings on unstable ground outside judicial expertise. The limits of lawyerly competence preclude federal courts from deciding political questions. Consider Gilligan v. Morgan, in which the Supreme Court found that training for the Ohio National Guard presented a political question because, quote, in which the courts have less competence. Well, with respect, I think choosing public health protocols is one of the few areas where courts have less expertise. After all, a case about the Ohio National Guard's crowd control techniques might be considered at least somewhat analogous to the excessive force cases that federal courts routinely hear. But federal courts don't hear any cases that require them to reach conclusions about a rapidly evolving uncertain area of medicine, like the response to the coronavirus. Let me ask you this, Mr. Thompson, Texas Democratic Party, however confusingly written the most recent opinion has been. It does hold that there's no political question in determining whether this pandemic has caused an abridgment or denial of a right to vote based on age and the attack on the 26th Amendment. Isn't this a similar issue in that the argument by your friend, Mr. Clement, is that this is a burden, that having to face voters having to face these risks, regardless of medical expertise, which can be presented in the case, does actually burden. And when you're looking at burdens, Anderson Burdick, Burdick is the way to to weigh those comparatively. Help me with this. Thank you, Your Honor. The court's finally written opinion in TDP versus Abbott is not confusing. But so the reason, at least as I understand the opinion that TDP versus Abbott says there isn't a political question, is that the court didn't have to confront questions of policy or prudence about pandemic response. I think in that case, also, there was some confusion about the exact scope of what the plaintiff's claim was. And the defendants argued there was a political question because they thought the claim implicated, you know, public health concerns in a way that it just didn't. So the way this court seemingly interpreted the plaintiff's claims in TDP versus Abbott was that they could be decided without any considerations of how public health would be impacted. It just turned on was there discrimination and did the discrimination constitute abridgment? And did all of that relate to the right to vote under the 26th Amendment? I think the reason Anderson Burdick can't be applied here is that it asks a fundamentally different question. In a normal Anderson Burdick case, the court is analyzing a burden imposed by the particular law being challenged. And if the court finds the burden to be too onerous, then the court can simply enjoin enforcement of that law to completely remove the burden. There's no real discretion there. So, for example, there's another case before this court, and the district court is called Gilby v. Hughes. I think it's another TDP versus Hughes in this court where other plaintiffs are also challenging HB 1888. That's the mobile voting issue that these plaintiffs are also challenging. Now, that case didn't present a political question because of the way they challenged the law. They said they want to vote at these locations, and they are prevented from doing so. Now, we have evidentiary disagreements about all that, but we'll just assume it arguendo for now. That's not a political question, but you can say, well, if you're not allowed to vote there, we can figure out whether you ought to be. In this case, that's not what these plaintiffs are saying. These plaintiffs have not alleged that they want to vote at a mobile voting location and can't. What they've alleged is that that provision, in combination with everything else they're challenging, creates a public health outcome that makes the risk of coronavirus infection too high. So we would obviously dispute that in any kind of trial. We would put on evidence about how there is not a very high risk of coronavirus infection and how the defendants have taken very reasonable steps to reduce it. But there would be no way to proceed with a trial on these plaintiffs' claims as they've pledged them without resolving public health issues. It would seem like at least their claims that they ought to be able to vote curbside is very similar to the issue in Hughes. Yes, Your Honor, and I think if these plaintiffs had alleged that, for example, they wanted to vote curbside and were precluded from doing so, that would be a very different claim. But plaintiffs have not alleged that at all, and that's been part of our standing argument all along. So as I read their complaint, at least, I think what they're saying is that the lack of curbside voting, again, in combination with all of the other things they challenge, will lead to too many people being in line or the risk of coronavirus being higher. There are definitely ways to challenge the provisions at issue without creating a political question. There are certainly many Anderson verdict-type claims that don't implicate the political question doctrine. Argument is a narrow one. It's the type of injury these plaintiffs have alleged on the theories that they bring in their complaint do implicate the political question doctrine, because they necessarily require a federal judge to decide how much coronavirus risk is too much, and to decide on these specific procedures that the defendants would apparently be ordered to implement to reduce that risk. That's what the district court found. If, in fact, the complaint had made the allegation you said, these three plaintiffs want to vote curbside, they're not presently eligible to do so, that burdens our right to vote. Where would we be? Make sure you understand what you're saying. I'm not trying to trap you, but I'm trying to understand where the defect in this complaint is. Is it as a matter of standing? Is it a matter that, regardless of standing, it would be a political question because of the way that it's phrased, as opposed to the more direct desire to vote curbside? I think the defects are related in this case, Your Honor. They certainly did not allege any kind of desire to vote curbside or an intention to do so and an ineligibility, but that kind of goes into how I think a reasonable reader of the complaint understands their claims on the merits as well. Because that isn't the injury they're complaining about, at least it leads me to read their complaint, that that is not the merit of their claim either. I think if we look at their prayer for relief, for example, Your Honor, it's clear that what they are seeking are affirmative injunctions from a federal district court to implement health and safety protocols to lower the risk of coronavirus infection. It's not about having an additional option for how to cast a ballot. I think that leads to the ways we briefed that the claims in this case truly are extraordinary. So first, as a district court held, plaintiffs challenged the prudence of Texas's policies. That's ROA 876. Now, plaintiffs now, of course, say that they didn't ask the district court to make a policy determination, but it's inherent in the claims they've pled. And the district court correctly looked past the labels that plaintiffs use and assessed the substance of their claims. If defendants are already taking reasonable and prudent steps to combat the virus, and we, of course, believe that they are, then plaintiff's claims would necessarily fail on the merits. And if this case goes forward, there'll be no way for a federal court to avoid deciding the prudence of Texas policy. That is why plaintiffs' opening brief in this court argues that defendants are not, quote, taking appropriate steps to protect the health and lives of voters. Again, of course, we would dispute that claim vigorously at trial, but that just means that there would be no way for a court to decide this case without deciding whether defendants are, quote, taking appropriate steps. Plaintiff's complaint specifically demands that defendants institute appropriate safety measures. That's ROA 50. Again, we believe that defendants are instituting appropriate safety measures, but that is not a dispute cognizable in federal court. Another Hylian. It seems to me they're concretely alleging they are fearful of touching the keys on the voting machines, and they want paper ballots, and they want more. They want curbside access, even if they're not disabled. Your Honor, they are not concretely alleging that any identified voter lives in a county that will not have paper ballots and wants to use a paper ballot. So one of the individual plaintiffs has now dropped out of this case, one of whom is eligible from the dismissal, but the other one, if memory serves, has not alleged that her county will not offer the paper ballots or even that she particularly desires paper ballots. As I read plaintiff's complaint, they have a generalized complaint that they think the state as a whole should have more paper ballots to reduce coronavirus transmission, but they don't have any kind of claim that an individual voter must have a paper ballot but doesn't. What about the claim about the mask? I would contrast that with the claim about curbside voting. Anyone who's going to vote in person is going to confront a situation in which there is no obligation for the poll workers or other voters to wear masks, which is, in this environment, why is that a political question, that that kind of risk can't be considered by the court? Is it a matter of having asserted they wanted to vote in person? It seems to me that's not really a fair reading of the complaint. Your Honor, I don't think they've asserted that they will be at a polling place where people are not wearing masks. In fact, the vast majority... They won't know until they go vote, but there's no obligation under the executive order or whatever the foundation for that is, executive order. So they won't know until they go vote, but there's no obligation. They know that before they go vote. There is no legal obligation to wear masks inside the polling place. And I guess let me start off by saying it would be a very strange voting rights claim that required the state defendants to turn away voters at the door who aren't wearing masks. And I think that's the important... A strange time, so I wouldn't dismiss it as too frivolous, but keep going. Yes, Your Honor. I can understand why the state officials here would be very reluctant to at least turn away voters who aren't wearing masks. And I think part of the reason for that is that the vast majority of voters are in fact wearing masks. And for the plaintiffs to claim any kind of injury from exposure to unmasked individuals, it needs to be certainly impending under the Clapper standard. They will in fact at least encounter those individuals. And I don't think they have alleged that. In addition, Your Honor... What's your justification for drawing a distinction between the requirement to wear masks in commercial places and in the voting place? If I heard Your Honor correctly, Your Honor was asking about the distinction between commercial activities and voting activities. And my understanding for the distinction has to do with the fact that it would be much less comfortable for the government to turn away voters as a result of the lack of a mask. Basically, there are concerns that that would burden the right to vote. What about the poll workers? How come they're not required to wear masks? I think it basically has to do with the same concern, Your Honor, that we are constantly trying to recruit... I say we. In reality, local officials are constantly trying to recruit more poll workers. And I believe that the vast majority of them are wearing masks. And to my knowledge, there's nothing preventing local officials from having their poll workers wear masks. It's simply the fact that the governor has not made it a crime to not wear masks. That's the way these proclamations and executive orders are enforced, is that noncompliance with them is a criminal offense that could be prosecuted by a local DA, for example. And so, you know, the state officials have made the determination that they do not want to criminally prosecute people who decline to wear masks. Does Texas have voter ID? Do voters have to show an ID? Yes, Your Honor. We do have a voter ID statute that was upheld in the Veezy case, if I recall. One of the reasons this claim is different than a traditional Anderson-Burdick claim is that they're talking about a burden imposed by pre-existing outside conditions that the state hasn't done enough to combat that pre-existing issue, not that the state is itself imposing the burden from the coronavirus. I think an example is helpful here. Consider Texans who want to participate in a protest in a public park. Of course, they have a First Amendment right to do so, and the state cannot impose unreasonable burdens on protesting. But if a Texan were disinclined to participate in a protest because of fear of contracting the coronavirus, perhaps from other protesters and that kind of thing, that person wouldn't be able to haul state officials into federal court and say you haven't done enough to combat the coronavirus, even though they have a First Amendment right to protest and even though states can manage public parks. I think that gives it the fundamental distinction between the burden imposed by the virus and whether the state has done enough to combat it, and they burden in another type of case that would actually be imposed by the law being challenged. With the few minutes remaining, Your Honor, I would like to turn to Standing and Sovereign Immunity. We may not have a lot of time. What can you tell us about today's Texas Supreme Court opinion, if that's what it was, about the Secretary of State? Yes, Your Honor. I'll hit that in Sovereign Immunity right now. So the name of the case is In Re Stephen Hotze. It is case number 20-0739. As Your Honor might imagine, during this time of the election calendar, election law cases are fast developing. And there were a number of cases implicated here. One of them was against the Secretary of State, Mandamus petition, saying that she had certain duties to run elections differently. The majority of the court did not reach that question and rejected the petition on timeliness grounds. But Justice Blacklock, joined by Justice Busbee, wrote a concurrence explaining the limited nature of the Secretary's authority, saying that she did not have a ministerial duty in this manner of overseeing local election officials, and ultimately concluded that the petitioners lacked Article 3, well, excuse me, that they lacked standing, and the Texas courts used the Article 3 standard for standing because the injuries were neither traceable to nor redressable by the Secretary of State. So I think that is... ...looks at the predicate state law question, both in the Sovereign Immunity analysis and in Article 3 standing. But even putting that to one side, Your Honor, the plaintiffs have not alleged that the Secretary has any demonstrated willingness to enforce the laws at issue here. With regard to the governor, I think the answer is even easier. This court has routinely rejected claims against the governor, both for claims related to the elections code and for claims related to his executive orders, because he simply does not enforce those rules. Even when the governor makes the rules, he is not the relevant enforcement agent for purposes of Ex Parte Young. As to standing, Your Honor, I believe that this case, this court's precedent in Enright Gee is controlling as to the need to show an injury in fact for each and every provision being challenged. That is not... Let me ask real quickly, what about the Voting Rights Act Section 2 claim? The Voting Rights Act claim, Your Honor, I believe suffers from the same standing defects and political question defects. The sovereign immunity analysis is different because this court has previously said that the VRA abrogates sovereign immunity and respectfully disagree with that conclusion. But I don't think the court needs to reach that here because even resolving the Ex Parte Young issue on the constitutional claims would go a long way to resolving this case because the VRA claim is not presented in the plaintiff's preliminary injunction motion. And I see that my time has expired, so unless the court has further questions, I will stop. Mr. Clements? Thank you, Your Honor. As much as Mr. Thompson would prefer that he gets to characterize our complaint, in fact, we, the plaintiffs in the first instance, get to characterize it and the judge in the district court gets to implement it. Despite his claims, we do specifically challenge with respect to our specific plaintiff's curbside voting. Ms. Torres would very much like to engage in curbside voting, but she cannot because she does not have a physical disability. Members of the NAACP... Your complaint makes that allegation somewhere? Yes, we do. That's fine. I'm just saying that it's actually in the complaint that she wants to vote that way. Your Honor, the thrust of the complaint is that Ms. Torres and the members of the NAACP would like to avoid the dangers associated with in-person voting. They would do so by curbside voting if they were permitted to. Those in Missouri City, which is within one of the counties that requires touchscreen voting, would like to avoid the touchscreens. These allegations are in our complaint. And so taking allegations about... general allegations in our complaint about the relief we've requested or about the dangers imposed by these and taking them in isolation from the specific challenges that we've made does not turn the case into an impermissible political question challenge, nor does it deprive us of the standing that we've specifically established with respect to each of the plaintiffs, with respect to each of the claims. I want to just respond a little bit to the discussion about masks because there was a lot of issues thrown around by my colleague on the other side hinting at potential reasons why the state might not want to require masks at polling centers. I don't think he settled on one, so we're still unclear, because that is not an issue that goes to justiciability. That is an issue that goes to whether the government can satisfy that they have a sufficient basis for the burden that unquestionably is imposed on voters that want to go to a voting place and not have to be confronted with people not wearing masks. And we do not suggest that polling stations turn away people from voting who don't have masks. Some of the defendants' guidance say that they have to do anyway with respect to infected voters, and they can allow them to vote. That does raise the issue. There are some people who do not want to wear a mask and would not take one if offered, yet they would demand their right to vote. And there's two answers to that, Your Honor. One, they could go to curbside. They could vote curbside, which the defendants already provide, and they provide it for people who are symptomatic. But there's a second answer to that. The governor, the defendant here, already requires people to wear a mask in public places whether they want to or not. They do not have a constitutional right in a pandemic not to wear a mask. There are people who might avoid public places because they don't want to break the law, but when it comes to voting, they want to go vote, and they don't want to wear a mask. And they aren't disabled, so they don't qualify for curbside voting. So, I mean, I see the issue of not wanting to turn away someone from a polling booth. But that decision not to let them curbside vote is a decision completely within the hands of the defendants. They can't say we have no choice but to expose tens of thousands of Texas voters or more to the virus because we're not willing to let people who don't want to wear a mask vote curbside. And if they want to make that argument, that's an argument to make in the district court on the merits of whether they have a substantial basis for the burden that they're imposing on voters. It's not a basis to block us from even having the judiciary consider our claims. If I could, Your Honors, briefly respond to the arguments on standing and sovereign immunity. As I said earlier, they run headlong into the Texas Democratic Party decision. The injury that we allege here is not getting COVID-19. It's the increased risk to voters of having to vote in person under these circumstances. The same injury that was found sufficient in Texas Democratic Party 1 and 2. And as to this claim that the governor is not amenable to suit on the executive order, because this is a challenge to an exemption in the executive order, he is the only possible defendant. So to accept his argument would mean that no executive order of the governor that excludes certain people from its protections or certain places from its protections could ever be challenged. And that's not the law. The governor is the appropriate defendant for that. And in any event, as my colleague acknowledges, the case could not be dismissed on the basis of sovereign immunity because of the Voting Rights Act claim. I see my time is up, Your Honors. Thank you, Counsel. Thank you.